UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA

-against-

HECTOR LEMOS,

                              Defendant.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

MEMORANDUM & ORDER

10-CR-954 (NGG)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ DEC 1 1 2012 ★
BROOKLYN OFFICE

The Government moves for an order to empanel an anonymous and partially sequestered jury. (Gov't Mem. in Supp. of Mot. for an Anonymous and Partially Sequestered Jury ("Gov't Mem.") (Dkt. 38).) Defendant Hector Lemos opposes this motion. (Lemos Mem. in Opp'n to Mot. for an Anonymous and Partially Sequestered Jury ("Lemos Opp'n") (Dkt. 42).) For the reasons explained below, the Government's motion is GRANTED.

I.     BACKGROUND

Lemos is charged with racketeering and several violent crimes arising from his membership in "Mara Salvatrucha" or "MS-13," an international gang known for narcotics trafficking and acts of violence. (Second Super. Indictment ("S-2") (Dkt. 36) ¶ 1.) Specifically, Lemos is charged with conspiring with MS-13 members to murder members of rival gangs, attempting to murder members of rival gangs, and murdering an individual he believed to be a rival gang member. (See id.)

The Government moves to empanel an anonymous and partially sequestered jury, requesting that: "(1) the names, addresses, and workplaces of members of both the venire and petit juries not be revealed; and (2) the jurors eat lunch together and be accompanied in and out

1

of the courthouse by members of the United States Marshals Service each day so that they do not mingle in the courthouse with the public or any potential trial spectator." (Gov't Mem. at 1.) The Government argues that these measures are necessary because MS-13 is known to be a gang engaged in violent crimes throughout the United States and Central America and has a "history of witness intimidation and other efforts to interfere with the judicial process." (Id. at 12-13.) The Government further argues that its requested measures are necessary because Lemos is charged with serious violent crimes and because the evidence at trial will show a pattern of violence, including evidence that Lemos volunteered to assassinate a Federal Bureau of Investigations ("FBI") officer who arrested several of Lemos' fellow gang members. (Id.)

Lemos opposes the Government's motion, arguing that he has no history of violence or attempts to obstruct justice, and that his mere affiliation with MS-13 is insufficient to indicate that the jury needs protection or would fear retaliation. (See Lemos Opp'n.) However, he indicates that if the court determines that protective measures are necessary, he would consent to procedures for partial anonymity and sequestration. (Id. at 2-3.)

## II. APPLICABLE LAW

It is well-settled that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007) (citation and internal quotation marks omitted). An anonymous jury may be empanelled upon: "(a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006) (citation omitted).

In considering whether there is need for a jury's protection, a district court must "balance the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence, against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Quinones, 511 F.3d at 295 (internal citation omitted). The court must evaluate the issue "in the light of reason, principle and common sense." United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).

Several factors guide the court's inquiry: (1) the dangerousness of the defendant as demonstrated by the seriousness of the charged crimes, the defendant's criminal history, and whether the defendant or his associates have engaged in past attempts to interfere with the judicial process, see, e.g.,United States v. Thai, 29 F.3d 758, 801 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); (2) whether the defendant has access to means of harming the jury, see, e.g., United States v. Melendez, 743 F. Supp. 134, 137 (E.D.N.Y. 1990); and (3) whether the trial is likely to attract media attention, see, e.g., Paccione, 949 F.2d at 1192; United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991).

The Second Circuit has clarified, however, that the mere specter of gang affiliation is not sufficient to satisfy the court's inquiry:

> The invocation of the words "organized crime," "mob," or "Mafia," unless there is something more, does not warrant an anonymous jury. This "something more" can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant[] and his associates such as would cause a juror to reasonably fear for his own safety. Such proof would be sufficient in and of itself in an appropriate case to warrant an anonymous jury regardless of whether the defendant was a reputed mobster or associated with a recognized organized crime family.

Vario, 943 F.2d at 241.

3

The decision whether or not to empanel an anonymous and partially sequestered jury is left to the district court's discretion. See Quinones, 511 F.3d at 295. In reaching its conclusion, the court considers all of the relevant factors in light of the second superseding indictment and the parties' submissions.

## III. DISCUSSION

For the reasons described below, the court concludes that there is a strong reason to believe that the jury needs protection, and thus will empanel an anonymous and partially sequestered jury. The court will take certain measures, described below, to minimize any prejudicial effects on Lemos and to ensure that his constitutional rights are protected. See Gotti, 459 F.3d at 346.

### A. Need to Protect the Jury

An examination of the relevant factors indicates that there is a strong reason to believe the jury needs protection. Lemos is charged with extraordinarily serious and violent crimes in this case, principally, murder in aid of racketeering and conspiracy to commit murder in aid of racketeering. Although the Indictment does not charge crimes that necessarily involve obstruction of justice, much of the evidence that the Government intends to present will involve acts of violence aimed at protecting and expanding the enterprise and keeping victims and rivals in fear of the enterprise and its members. (S-2 Indictment ¶¶ 1-4.) In other words, Lemos is charged with being a member of an enterprise that promotes a violent reputation and maintains its power through violence and intimidation. See Vario, 943 F.2d at 241.

Moreover, the Government intends to show that MS-13's violence is not just directed at rival gang members. The Government intends to offer evidence that Lemos volunteered to assassinate an FBI officer who had arrested several MS-13 members and who the gang

4

considered to be responsible for damaging its influence and criminal operations. (Gov. Mem. at 6-7.)

The pattern of violence by Lemos and his associates in the enterprise is part of a larger scheme that has received attention from Government agencies and the media. MS-13's pattern of extreme violence has been the subject of recent local media attention (see, e.g., Gov't Mem. at 13 (detailing recent press coverage about MS-13 members indicted in this district)) and national attention (see id. (referring to a U.S. Department of Treasury press release designating the gang as a transnational criminal organization)).

Lemos argues that these allegations are insufficient to demonstrate a need for jury protection because such protections are not proper when based solely on a defendant's affiliation with an organization. (See Lemos Opp'n at 1-2 (citing Vario, 943 F.2d at 241).) In this case, however, there is more than Lemos' mere affiliation: the Indictment suggests that the trial evidence will relate principally to a pattern of violence by Lemos himself as well as his associates, targeted at those who stood in the way of the gang's power and reputation. There is "something more" than mere gang association here, and therefore a real concern that the jury members will fear for their safety. Vario, 943 F.2d at 241.

Lemos also argues, without elaboration or support, that he "does not anticipate any real media interest in the trial which would militate in favor of granting the Government's application." (Lemos Opp'n at 2.) However, the Government's prediction that the recent media attention to criminal proceedings involving MS-13 will continue is not unreasonable. See Vario, 943 F.2d at 240 (where there had been some pre-trial publicity, the Government's prediction that it would continue was not unreasonable).

Lemos also argues that there is no evidence that Lemos has access to means to harm the jury. Lemos bases his argument on the fact that he has few visitors and his phone calls are monitored. (Lemos Opp'n at 2.) Given the scale of the MS-13 gang and the fact that it has numerous members in jail, however, the court is unable to conclude that Lemos no longer has ties to the gang. In any event, Lemos' dangerousness, combined with the likelihood of media attention, creates a strong need for juror protection.

Lastly, Lemos argues that if the court concludes that measures to protect the jury's safety are necessary, it should require only partial anonymity and sequestration under the procedures set forth in Melendez, 743 F. Supp. at 138-39. (Lemos Opp'n at 2-3.) The Melendez court ordered that the first names, specific addresses, and names and addresses of employment of potential jurors would be withheld, but that their surnames, general areas or neighborhoods in which they lived, and general type of employment would be revealed. 743 F. Supp. at 138-39. The Government opposes partial anonymity and argues that full anonymity measures are necessary. (See Gov't Reply (Dkt. 44).)

The court agrees with the Government that the partial measures are not sufficient to address the need for protection of the jury. Given MS-13's notoriety as a violent gang, the pattern of violence and retribution the Government will seek to demonstrate at trial, and the ease of using the internet and social media to pair a last name with a full identity and personal information, this court's common sense and experience tell it that full juror anonymity is necessary.

Additionally, measures must be taken to ensure that the jurors do not mingle in the courthouse with the public or any potential trial spectator. The Government suggests that the jurors be escorted in and out of the courthouse each day by the United States Marshalls Service,

and that they spend lunch and recess together. The court agrees that these partial sequestration measures are necessary and appropriate.

Accordingly, an anonymous and partially sequestered jury is necessary to protect the safety of the jurors.

### B. Reasonable Precautions

Having concluded that an anonymous and partially sequestered jury is necessary, the court must consider what precautions can be taken to minimize any potential prejudicial effects on Lemos. See United States v. Bellomo, 263 F. Supp. 2d 557, 559 (E.D.N.Y. 2003) (It is important "that a balance be struck between the government's interest in the integrity of the judicial process and the defendant's interest in preserving and safeguarding the presumption of innocence."). In order to fairly balance Lemos' interests with the jury members' interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict, reasonable precautions must be taken to minimize any potential prejudice, particularly with respect to Lemos' right to a meaningful voir dire and right to a presumption of innocence. See United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994).

As to meaningful voir dire, the court will provide each potential juror with a relatively extensive questionnaire, developed in consultation with the parties. Pedigree information that identifies potential jurors will be removed from the questionnaire after submission and placed in safekeeping with the Clerk of Court. Neither of the parties nor counsel will have access to this protected information. Each prospective juror will be questioned in person by the court, in open court, in an individually sequestered setting, in the presence of Lemos and counsel, to uncover any potential bias. Through the questionnaire and the individual questioning, the parties will be apprised of all relevant information concerning each potential juror, despite the fact that the

7

names, addresses, and places of employment of jurors will not be disclosed. This process will ensure that Lemos has a meaningful opportunity to conduct voir dire and make informed choices during jury selection. See United States v. Barnes, 604 F.2d 121, 140 (2d Cir. 1979) ("As long as a defendant's substantial rights are protected by a voir dire designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.")

In order to protect Lemos from being tried before a jury prejudiced as to his guilt or violent nature, prospective jurors will be given a neutral explanation for the security measures. The court will instruct the prospective jurors that the reason for their anonymity and partial sequestration is to maintain their personal privacy and to secure their ability to render a fair verdict in light of the media and public attention that this trial will likely receive. The court will instruct the jurors that transportation is being provided to protect their privacy and to ensure a timely start at each juncture of what promises to be a lengthy trial. These explanations are plausible, appropriate, and non-prejudicial. See United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995).

## IV. CONCLUSION

For the foregoing reasons, the Government's motion for an anonymous and partially sequestered jury is GRANTED, subject to the above precautions.

SO ORDERED.  s/Nicholas G. Garaufis

Dated: Brooklyn, New York  NICHOLAS G. GARAUFIS
December 10, 2012  United States District Judge